Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio



# OPINION

No. 04-07-00220-CR

Marvin **WEBB**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st Judicial District Court, Wilson County, Texas
Trial Court No. 04-11-215-CRW
Honorable Donna S. Rayes, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:        Alma L. López, Chief Justice
                Phylis J. Speedlin, Justice
                Steven C. Hilbig, Justice

Delivered and Filed:   June 4, 2008

AFFIRMED

Marvin Webb was charged by way of a two-count indictment with the offenses of manufacturing of a controlled substance and possession of precursor materials with intent to manufacture a controlled substance. Webb waived his right to a jury trial and the trial court found him guilty on both counts. On appeal, Webb argues that: 1) the trial court erred by proceeding to trial on the second count without first securing a plea from him; 2) he received multiple punishments for the same conduct in violation of the Double Jeopardy Clause; and 3) the evidence is factually

insufficient to support his conviction for the offense of manufacturing a controlled substance. We overrule Webb's issues and affirm the judgment of the trial court.

1. The indictment charged Webb with knowingly manufacturing methamphetamine in an amount of four grams or more but less than 200 grams (Count I), and possessing an immediate precursor, namely ephedrine or pseudoephedrine, iodine, acetone, lye, and charcoal lighter fluid, with intent to manufacture methamphetamine (Count II). Webb first argues that the trial court erred in proceeding to trial on Count II of the indictment—and subsequently entering a finding of guilty on that count—because he never entered a plea on Count II, and hence the issue of his guilt on Count II was never joined. The following exchange occurred after Webb waived his right to a jury trial:

| Trial court: | Calling Cause No. 04-11-00215, *State of Texas v. Marvin Webb*. Is the State ready? |
| Prosecution: | The State is ready. |
| Trial court: | Defense ready? |
| Defense: | Ready, Your Honor. |
| Trial court: | [Defense counsel], does Mr. Webb wish to have the indictment read or is he willing to waive the reading of the indictment? |
| Defense: | We'll waive the reading of the indictment, Your Honor. We've reviewed it and waive the reading. |
| Trial court: | All right. Mr. Webb, please stand. To the offense as alleged in the indictment, manufacture of a controlled substance[,] methamphetamine, how do you plead? |
| Webb: | Not guilty. |
| Trial court: | You may be seated. |

Without objection by Webb, the trial then proceeded through the evidentiary phase and concluded with the trial court finding that the evidence supported Webb's guilt as to the offense of "manufacture of a controlled substance, methamphetamine." At the conclusion of the punishment phase, the trial court found Webb guilty of both counts as alleged in the indictment and sentenced him to 30 years' confinement on Count I and 20 years' confinement on Count II, the sentences to run concurrently.

For the first time, Webb now argues on appeal that the absence of a plea to Count II constitutes a violation of articles 27.02[1] and 27.16[2] of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 27.02(4) (Vernon 2006); art 27.16(a) (Vernon 2006). Webb relies on *Peltier v. State,* 626 S.W.2d 30, 31 (Tex. Crim. App. 1981), to support his position that "[u]ntil the indictment is read and a plea is entered the issue is not joined between the State and the accused before the jury." However, in *Peltier*, the defendant's conviction was reversed because at the guilt/innocence phase, the indictment was not read and the defendant did not enter his plea in the presence of the jury, in violation of article 36.01, and the defendant brought the error to the trial court's attention in a motion for new trial. *Peltier*, 626 S.W.2d at 30-31; TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(1), (2) (Vernon 2007) (requiring that indictment be read and plea entered in jury's presence). The rationale for the rule requiring the reading of the indictment and entry of a plea before the jury is to inform the defendant and the jury of the charges at issue, and to allow the jury to hear the defendant admit or refute the charges. *See Martinez v. State*, 155 S.W.3d 491, 495 (Tex. App.—San Antonio 2004, no pet.) ("Without the reading of the indictment and the entering of a plea, no issue is joined upon which to try."). A timely objection to afford the trial court an opportunity to cure the defect is required to preserve error. *Id*.; *Cantu v. State*, 939 S.W.2d 627, 646 (Tex. Crim. App. 1997). When the error is discovered after trial, error may be preserved through a motion for new trial, bill of exception, or motion to arrest judgment. *Warren v. State,* 693 S.W.2d 414, 416

---

[1] "The pleadings and motions of the defendant shall be: (4) a plea of not guilty." TEX. CODE CRIM. PROC. ANN. art. 27.02(4) (Vernon 2006).

[2] "The plea of not guilty may be made orally by the defendant or by his counsel in open court. If the defendant refuses to plead, the plea of not guilty shall be entered for him by the court." TEX. CODE CRIM. PROC. ANN. art 27.16(a) (Vernon 2006).

(Tex. Crim. App. 1985); *Martinez*, 155 S.W.3d at 495. Here, Webb did not object during trial to the trial court's failure to secure his plea to Count II, and did not raise the issue in a post-trial motion; therefore, error was not preserved. *See Lee v. State*, 239 S.W.3d 873, 876 (Tex. App.—Waco 2007, pet. ref'd) (holding that an objection is required to preserve an article 36.01 complaint). Accordingly, Webb's first issue is overruled.

2. Next, Webb contends he was assessed multiple punishments for the same offense in violation of the Double Jeopardy Clause of the Fifth Amendment. *See North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (the Fifth Amendment guarantee against double jeopardy protects against multiple punishments for the "same offense"). The indictment charged Webb with two counts as follows:

> Count I
> Knowingly manufacture, by the production, preparation, propagation, compounding, conversion, or processing of a controlled substance, directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, a controlled substance, namely methamphetamine, in an amount of four grams or more but less than 200 grams;

> Count II
> With intent to unlawfully manufacture a controlled substance, namely methamphetamine, possess an immediate precursor, to wit: ephedrine or pseudoephedrine, iodine, acetone, lye, and charcoal lighter fluid; . . .

Webb argues that the precursor chemicals that formed the basis for his conviction under Count II were possessed as part of a course of action engaged in to manufacture methamphetamine, which resulted in his conviction under Count I; thus, the conviction under Count II was a second conviction for the same conduct. In support, Webb relies on *Lopez v. State*, in which the court held that double jeopardy barred the defendant's convictions for both delivery of cocaine and possession of the same

quantity of cocaine with intent to deliver. *See Lopez v. State*, 108 S.W.3d 293, 299 (Tex. Crim. App. 2003).

We find *Lopez* distinguishable and disagree that Webb received multiple punishments for the same offense in violation of double jeopardy. In *Lopez*, the defendant was punished for distinct steps in a single drug transaction that flowed from one "original impulse." *Id.* at 297-301 (holding that defendant charged with violation of section 481.112 of the Health and Safety Code cannot be punished more than once for manufacturing, possessing, and delivering *the same single cache of drugs*) (emphasis ours). Here, however, two different "impulses" were involved. Offense one, manufacturing of methamphetamine, was completed when methamphetamine was manufactured on the premises controlled by Webb, as evidenced by the cache of drugs seized during the search of Webb's shop. Offense two, possession of precursor materials with intent to manufacture methamphetamine, was completed when precursor materials were seized at Webb's shop, indicating Webb's ability to subsequently manufacture a separate batch of methamphetamine. *See United States v. Anderson*, 987 F.2d 251, 255 (5th Cir.), *cert. denied*, 510 U.S. 853 (1993) (affirming separate convictions for the offenses of manufacturing methamphetamine and attempting to manufacture methamphetamine where evidence showed offenses were factually distinct because they were based on different batches of methamphetamine); *see also Toro v. State,* 780 S.W.2d 510, 512 (Tex. App.—San Antonio 1989, no pet.) (holding double jeopardy does not bar prosecution for distinct possession and delivery offenses where separate drug quantities are identified for each offense). Because possession of the precursor materials gave Webb the ability to manufacture a new batch of methamphetamine, a "new bargain" existed for which he could be punished. *See Lopez*, 108 S.W.3d at 301. We conclude that Webb engaged in two individual, separate acts that the Legislature

has made subject to separate prosecutions and separate punishments. Accordingly, Webb did not receive multiple punishments for the same offense and his second issue is overruled.

3. Finally, Webb maintains the evidence is factually insufficient to support his conviction for the offense of manufacturing methamphetamine under Count I of the indictment. In evaluating factual sufficiency, we review all of the evidence in a neutral light, and set aside the jury's verdict only if (1) the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or (2) the verdict is against the great weight and preponderance of the evidence. *Johnson v. State,* 23 S.W.3d 1, 11 (Tex. Crim. App. 2000); *Cain v. State,* 958 S.W.2d 404, 408 (Tex. Crim. App. 1997). We must remain mindful that the jury is the sole judge of the credibility of the witnesses, and may choose to believe all, some, or none of a witness's testimony. *Cain,* 958 S.W.2d at 407 n.5. Under the first prong, we may not conclude the verdict is "clearly wrong" or "manifestly unjust" simply because, based on the quantum of evidence admitted, we would have rendered a different verdict. *Watson v. State,* 204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Similarly, under the second prong, we may not conclude that a conflict in the evidence requires a new trial simply because we disagree with the jury's resolution of the conflict—the great weight and preponderance of the evidence must contradict the jury's verdict before we may reverse on that basis. *Id.* When addressing factual sufficiency, we must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State,* 99 S.W.3d 600, 603 (Tex. Crim. App. 2003); *Mullins v. State*, 173 S.W.3d 167, 173-74 (Tex. App.—Fort Worth 2005, no pet.).

To obtain a conviction on Count I, the State was required to prove that Webb knowingly manufactured methamphetamine in an amount of four grams or more but less than 200 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (Vernon 2003). To obtain a conviction for

the manufacture of a controlled substance, the State must link the defendant either to an interest in the place where the manufacturing was taking place or to the actual act of manufacturing. *Brown v. State*, No. 07-06-0087-CR, 2007 WL 1245842, at *3 (Tex. App.—Amarillo Apr. 30, 2007, pet. ref'd) (mem. op.) (not designated for publication); *East v. State*, 722 S.W.2d 170, 172 (Tex. App.—Fort Worth 1986, pet. ref'd).

Manufacturing can be established through circumstantial evidence. *See McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985). Although mere presence at a drug laboratory is insufficient to support a conviction for manufacturing, it is a circumstance tending to prove guilt that, when combined with other facts, shows that the accused was a participant in the manufacturing. *See Green v. State*, 930 S.W.2d 655, 657 (Tex. App.—Fort Worth 1996, pet. ref'd). A link to manufacturing exists when there is "evidence of possession of a drug lab on one's premises combined with evidence that the lab has been used on the premises to manufacture the drug alleged, and in circumstances where the presence of the lab, because of its open location or odor or both, is shown to have been known to the defendant." *East*, 722 S.W.2d at 171-72.

At trial, two witnesses testified on behalf of the State and four witnesses, including Webb, testified for the defense. Sandra Noll, a narcotics investigator, testified that an anonymous tip that "somebody had been cooking meth all night at a motorcycle shop" led her to Webb's business in Wilson County. Upon arriving at the shop on a Sunday morning, Noll encountered Webb, Robert Bishop, David Kozekwa, and Valerie Egert. Webb was at the back of the shop in an enclosed room. Webb, the owner of the motorcycle shop, signed a consent to search form. During the search of the premises, the following drug and non-drug evidence was photographed and collected from the back of the shop: a bottle of Red Devil Lye; a coffee pot; coffee filters containing large white pills; a

Pyrex dish with white powder residue; razor blades; a metal screen filter; a light bulb converted into a smoking pipe; a syringe; a metal pan containing matchsticks and coffee filters; and a coffee pot containing sludge. Noll stated the coffee pot sludge was common when making methamphetamine.

In a Ford Bronco parked at the shop, Noll found a box containing a coffee pot, coffee filters, hydrogen peroxide, Red Devil Lye, razor blades, a funnel, acetone, charcoal lighter fluid, a postal scale, a glass skillet, and duct tape. In the work area of the shop, Noll seized a syringe and a beer can that looked like it had been used to heat methamphetamine. In the grassy area about fifteen feet from the back of the shop, Noll uncovered a digital scale and modified water hoses—segments of rubber hose modified with tape and bottle tops—which Noll stated was commonly used to manufacture methamphetamine. In a pickup truck located at the rear of the shop, Noll recovered a bottle of Red Devil Lye and coffee filters. In the bedroom area, she recovered two bottles of Red Devil Lye, a bottle of acetone, a 55-gallon barrel containing hundreds of matchbooks, a microwave with a large amount of white residue splattered on the inside, and a hotplate. Prior to the search, Bishop was arrested for possession of methamphetamine. After the search, Webb, Kozekwa, and Egert were also arrested. Fingerprint evidence was not collected at the shop.

Joel Budge, a drug analyst for the Texas Department of Public Safety, testified that the evidence taken from Webb's shop indicated a methamphetamine manufacturing process called the "red phosphorus iodine method." Budge elaborated on the process used to manufacture methamphetamine from ephedrine or pseudoephedrine, and noted that certain products are routinely used in the process, including iodine, lye, segmented water hoses, razor blades, acetone, coffee filters, hydrogen peroxide, charcoal lighter fluid, and red phosphorus from matchbooks. In relation to the evidence seized at Webb's shop, Budge stated that his tests revealed varying amounts of

methamphetamine on several items. Budge testified that in his expert opinion, the exhibits he analyzed pertinent to this case were evidence of manufacturing methamphetamine. Budge further opined that it was reasonably probable for a person working alone to complete the entire processing and manufacturing of the amount of methamphetamine found at Webb's shop in four to eight hours.

Webb testified that he began repairing motorcycles as a hobby, which then progressed to a full-time repair job, along with fixing lawnmowers, building fences, and other odd jobs. He lived with his sister, Scarlet Carpenter, who grew tired of the junk pile he had accumulated and stored at her home. Carpenter found an old building down a back country road for Webb to rent and he used it as a shop out of which to operate his repair business. Webb leased the shop for about a year before he was arrested.

Webb testified that he met Robert Bishop a long time ago, but had been out of touch until Bishop contacted him after Bishop was released from jail. Webb testified that he attempted to help Bishop, who drank a lot, by allowing him to stay at the shop in a make-shift bedroom, rent-free. There was not a bathroom or running water in the shop. Bishop avoided Webb during the day, and Webb suspected that Bishop had parties at the shop during the night because the neighbors told him that Bishop was loud and left behind messes. Webb stated that the day before the arrest, he had decided that Bishop could no longer stay at the shop and had locked up the shop so that Bishop could not enter. Just as Webb was about to leave with his sister, however, Bishop arrived, drunk, and demanded his clothes. Webb decided to give Bishop one more chance and allowed him to enter to get his clothing, but told him to stay no longer than five minutes. The next morning, Webb arrived at the shop to find Bishop was still there, and it appeared that he had been drinking all night.

Webb testified that the lye seized during the search came from Bishop's Bronco, which he had assumed Bishop used to clean drains when working with his father on plumbing systems. Webb stated that the acetone was used to clean motorcycles and that the charcoal lighter fluid was used to light fires in the fireplace. Webb stated that he had no knowledge that methamphetamine was manufactured at his business and that Bishop must have done it the day before the search while he was gone.

David Kozekwa worked on motorcycles in the shop with Webb. Kozekwa testified that on the day of the search, Bishop was at the shop before either he or Webb arrived, and he believed that Bishop had been at the shop the entire night before the search. He stated that acetone was commonly used in motorcycle repairs, and that he had not noticed any lye around the shop. Kozekwa stated that he did not like the things Bishop was involved in, and that people often came to the shop looking for Bishop. Amica Jo Chapa, custodian of records at the Wilson County jail, testified that Webb had seventy cents on his person when processed into the jail on the day he was arrested. Chapa testified that Bishop had $309.58 in cash on him the day he was arrested. Finally, Carpenter testified regarding her dislike and distrust of Bishop.

Webb contends that the evidence does not prove that he manufactured methamphetamine; rather, he posits that the evidence shows "the possibility of manufacturing by someone" at the shop, "in all likelihood, Bishop." We disagree and hold that the evidence is factually sufficient to support Webb's conviction under Count I of the indictment. The record contains sufficient evidence to affirmatively link Webb to the manufacturing of methamphetamine inside his business. Webb controlled the premises where the methamphetamine lab was discovered. *See East*, 722 S.W.2d at 171-72. He was the owner of the motorcycle shop and the lessee of the building. At the time of the

officers' arrival, Webb was in the enclosed back room, where the methamphetamine lab was located. The trial court, as fact finder, could have chosen to disbelieve Webb's testimony that he was unaware of the lab.

Moreover, the testimony regarding Bishop's unsavory character does not mitigate Webb's guilt. The trial court could have discounted Webb's theory that Bishop was the only participant in the manufacturing, and instead relied on the testimony regarding the open location of the lab and readily apparent materials in the shop to reach its verdict. Although there was no direct evidence showing Webb was present during the manufacturing or that he knew there was methamphetamine in his shop, we conclude that the trial court, as the trier of fact, could rationally infer and find beyond a reasonable doubt that Webb manufactured methamphetamine. The verdict is not so against the great weight and preponderance of the evidence as to be clearly wrong and manifestly unjust. Webb's third issue is overruled.

The judgment of the trial court is affirmed.

Phylis J. Speedlin, Justice

PUBLISH