*Court Of Appeals*
*Fourth Court of Appeals District of Texas*
*San Antonio*



# OPINION

Nos. 04-07-00583-CR & 04-07-00584-CR

Eduardo **GUERRERO**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 226th Judicial District Court, Bexar County, Texas
Trial Court Nos. 2006-CR-4524 & 2006-CR-9269
Honorable Olin B. Strauss, Judge Presiding

Opinion by:    Phylis J. Speedlin, Justice

Sitting:        Karen Angelini, Justice
              Phylis J. Speedlin, Justice
              Steven C. Hilbig, Justice

Delivered and Filed:  August 13, 2008

AFFIRMED IN PART; VACATED IN PART

Eduardo Guerrero appeals his convictions for possession, possession with intent to deliver, and manufacture of between four and 200 grams of methamphetamine. On appeal, Guerrero argues the trial court erred by denying him: (1) a proper determination of his competence to stand trial; (2) due process when it failed to hold a hearing on competency; and (3) protection from double jeopardy when it convicted him of possession, possession with intent to deliver, and manufacture of the same quantity of methamphetamine. Because we overrule Guerrero's first two issues on competency, and

sustain his third issue on double jeopardy, we vacate the trial court's judgment as to Guerrero's convictions for manufacturing and possession of methamphetamine and affirm his conviction for possession with intent to deliver methamphetamine.

### FACTS AND PROCEDURAL HISTORY

On April 6, 2006, Converse police went to Guerrero's residence at 632 Jamie Sue to investigate a tip that a methamphetamine lab was being operated at that address. When officers knocked on the door, Guerrero opened it, and the officers smelled an "overwhelming" odor of chemicals associated with methamphetamine. The officers obtained a search warrant before searching the house. Of the items seized, three tested positive for methamphetamine, which, along with adulterants and dilutants, weighed 74.62 grams, 4.49 grams, and 1.34 grams.[1] Guerrero was charged in a two-count indictment with possession with intent to deliver between four and 200 grams of methamphetamine, and possession of between four and 200 grams of methamphetamine. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(a), (d), 481.115(a), (d) (Vernon 2003). He was later charged in a separate indictment with manufacturing methamphetamine in an amount between four and 200 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d). All three of the charged offenses were alleged to have occurred on or about April 6, 2006. The trial court consolidated the two causes for trial, and Guerrero represented himself during both phases of trial. A jury found Guerrero guilty of all three offenses. The court assessed punishment at forty-five years of imprisonment for each offense, with the sentences to run concurrently.[2]

---

[1] Additionally, the search revealed another item containing pseudoephedrine, a precursor to methamphetamine, and several other chemicals.

[2] Guerrero pled "true" to commission of a prior felony and received a sentence enhancement as a repeat offender. *See* TEX. PENAL CODE ANN. § 12.42(b), (c)(1) (Vernon Supp. 2007).

## COMPETENCY

In his first two issues on appeal, Guerrero argues the trial court had ample evidence to suggest that he had no rational understanding of the serious charges against him; therefore, the court erred in failing to conduct an adequate inquiry into his competence to stand trial under the Texas Code of Criminal Procedure and under the Due Process Clause of the United States Constitution. *See* TEX. CODE CRIM. PROC. ANN. arts. 46B.003(a)(2), 46B.004, & 46B.005 (Vernon 2006); *see also Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996); *McDaniel v. State*, 98 S.W.3d 704, 709 (Tex. Crim. App. 2003) (conviction of legally incompetent person violates due process). In his brief, Guerrero expressly states that he is only challenging the court's procedural error in failing to hold an adequate hearing, and is not claiming that he was actually incompetent to stand trial or to represent himself. Guerrero asks us to abate the appeal and remand the cause to the trial court to conduct an inquiry into whether there was some evidence at the time of trial that would support a finding of incompetence. *See Greene v. State*, 225 S.W.3d 324, 329 (Tex. App.—San Antonio 2007, no pet.). We will address both issues together.

Under the Texas Code of Criminal Procedure, a defendant is presumed competent to stand trial, and must be found competent, unless proved incompetent by a preponderance of the evidence. TEX. CODE CRIM. PROC. ANN. art. 46B.003(b) (Vernon 2006). If evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the trial court, then the court on its own motion must suggest that the defendant may be incompetent to stand trial. TEX. CODE CRIM. PROC. ANN. art. 46B.004(b). Upon a suggestion of incompetence, the trial court must then conduct an informal inquiry into whether there is some evidence from any source that would support a finding

that the defendant may be incompetent to stand trial.[3] TEX. CODE CRIM. PROC. ANN. art. 46B.004(c). A defendant is incompetent to stand trial if he does not have a rational as well as factual understanding of the proceedings against him.[4] TEX. CODE CRIM. PROC. ANN. art. 46B.003(a)(2); *McDaniel*, 98 S.W.3d at 709-10. "Some evidence" of incompetency is "a quantity more than none or a scintilla." *Sisco v. State*, 599 S.W.2d 607, 613 (Tex. Crim. App. [Panel Op.] 1980). If, after an informal inquiry, the court determines there is some evidence to support a finding of incompetency, the court must order an examination to determine whether the defendant is incompetent to stand trial in a criminal case. TEX. CODE CRIM. PROC. ANN. art. 46B.005(a). We review a trial court's decision not to conduct a competency inquiry for an abuse of discretion. *Moore v. State*, 999 S.W.2d 385, 393 (Tex. Crim. App. 1999); *Greene*, 225 S.W.3d at 328.

### *Pre-Trial Hearings on Self-Representation*

At the outset, we note that the trial court did conduct an informal inquiry into Guerrero's mental competence when it held two *Faretta* hearings on Guerrero's request to represent himself. *See Faretta v. California*, 422 U.S. 806, 835-36 (1975) (criminal defendant has constitutional right to conduct his own defense at trial, but record must reflect a knowing and intelligent election to proceed without counsel); *Hatten v. State*, 71 S.W.3d 332, 333 (Tex. Crim. App. 2002). The United

---

[3] We have previously held that the statute no longer requires the trial court to have a "bona fide doubt" regarding the defendant's competency in order to trigger an informal competency inquiry; rather, all the statute requires is some evidence "suggesting" the defendant may be incompetent to trigger the informal inquiry. *Greene*, 225 S.W.3d at 329 n.3 (referring to "bona fide doubt" standard established in *McDaniel*, 98 S.W.3d at 706, 710, which may be satisfied by "recent severe mental illness, at least moderate retardation, or truly bizarre acts by the defendant"). We note that other courts of appeal have continued to apply *McDaniel*'s "bona fide doubt" standard even after article 46B.004's amendment. *See*, *e.g.*, *Salahud-Din v. State*, 206 S.W.3d 203, 208 (Tex. App.—Corpus Christi 2006, pet. ref'd); *Ford v. State*, No. 05-04-01819-CR, 2006 WL 710946, at *1 n.1 (Tex. App.—Dallas Mar. 22, 2006, pet. ref'd) (not designated for publication); *LaHood v. State*, 171 S.W.3d 613, 618 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd).

[4] A defendant is also incompetent if he does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding. TEX. CODE CRIM. PROC. ANN. art. 46B.003(a)(1) (Vernon 2006); *McDaniel*, 98 S.W.3d at 709. Guerrero, however, does not raise this argument on appeal.

States Supreme Court recently addressed the relation between the standard for competence to stand trial and the right of self-representation. *Indiana v. Edwards*, ___ U.S. ___, 128 S.Ct. 2379, 2383 (June 19, 2008). The Court expressly recognized that there is a mental competency limitation on the right to self-representation, and that competence to represent oneself during trial proceedings involves a higher standard than that required for competence to stand trial. *Id.* at 2384, 2386-87. Clearly then, evidence developed through the court's inquiry into Guerrero's mental competence for purposes of self-representation under this higher standard is relevant to our inquiry as to whether there exists any evidence suggesting Guerrero's basic incompetence to stand trial.

At the first *Faretta* hearing on his request for self-representation, the court informed Guerrero of the range of punishment he was facing, verified that he understood the charges against him, and admonished him at length on the dangers and disadvantages of proceeding *pro se*. *See* TEX. CODE CRIM. PROC. ANN. art. 1.051(g) (Vernon Supp. 2007). Additionally, the court inquired about his educational and work background, and whether Guerrero had any history of mental disorders or psychiatric treatment, to which he replied he did not. Upon being asked by the judge, Guerrero responded that he believed he was competent to stand trial, and Guerrero's appointed attorney, who had represented him for some time, also responded that he had no concerns about Guerrero's competency. The court then found Guerrero mentally competent. After obtaining a written waiver of counsel from Guerrero, the court granted his attorney's motion to withdraw and permitted Guerrero to represent himself. The record of this hearing contains no evidence suggesting that Guerrero did not have a rational as well as factual understanding of the proceedings against him. To the contrary, Guerrero answered clearly, coherently, and consistently that he understood the allegations against him, the punishment range, and the various risks and disadvantages of representing himself, and repeatedly reiterated his desire to proceed *pro se*. Guerrero made

reference to the defense strategy he would employ when, having been asked whether he understood the allegations against him, he responded, "Yes, sir. But – it is my – it is my stance that a lawful claim has not been tendered to me yet, sir." Guerrero also explained his belief that, "being saddled with an attorney grants this court jurisdiction and it also waives any defects of process." These types of statements challenging the State's authority to charge him with a crime and prosecute him in court, which have been similarly voiced by other defendants in other criminal prosecutions, do not suggest that Guerrero was legally incompetent to stand trial. *See, e.g., United States v. Masat*, 948 F.2d 923, 924 (5th Cir. 1991) (criminal defendant argued federal district court lacked personal jurisdiction based on defendant's status as "Freeman"); *United States v. McLaren*, No. P-00-CR-400, 2001 WL 1910571, at *1 (W.D. Tex. June 19, 2001, order) (denying defendants' motion to dismiss criminal action for want of jurisdiction based on claim that, as citizens of the sovereign nation "Republic of Texas," they are immune from prosecution in federal district court); *Scotka v. State*, 856 S.W.2d 790, 791-92 (Tex. App.—San Antonio 1993, no pet.) (rejecting criminal defendant's request to have case transferred to a "Common Law Court of United States" because she is a "sovereign body" immune from jurisdiction of Texas laws and courts). The trial court did not abuse its discretion in failing to conduct a further competency inquiry after the first *Faretta* hearing.

Prior to jury selection, a different trial judge conducted another *Faretta* hearing in which he repeated the same inquiries and admonishments as in the first hearing. Having received substantially the same responses from Guerrero, the trial court found Guerrero mentally competent, stating that, "He understands the right to counsel. And he has made his decision to represent himself with his eyes wide open." The court then permitted Guerrero to proceed to trial representing himself, with appointed stand-by counsel. Again, this record contains no evidence whatsoever to suggest to the

court that Guerrero was not competent to stand trial; therefore, we cannot say the court abused its discretion in failing to conduct a further competency inquiry.

Guerrero argues on appeal that "had the trial judge read Guerrero's notations on the certificate of service attached to the State's motions to seek [repeat] offender status, 'he might well have reached a different conclusion.'" The notations to which Guerrero refers state: "Accepted for value. I did not find your check herewith! This property exempt from Levy . . . Conditional upon proof of claim that the fiduciary holder of my account did not commit a defalcation by dishonoring the bill negotiated back to the drawer/offeror for the adjustment and set off, or settlement of the account." First, Guerrero assumes the trial court had not seen the notations, a conclusion we may not draw based on the record before us. Second, given Guerrero's defense theory that the State of Texas is a corporation, and his application of contract law concepts to his criminal prosecution, we do not agree that the notations necessarily provide any suggestion that Guerrero was legally incompetent to stand trial.

We see no evidence from any source in the record of these pre-trial proceedings to suggest to the trial court that Guerrero was incompetent to stand trial. Thus, the trial judge did not abuse its discretion in failing to conduct a further inquiry into Guerrero's competence to stand trial.

### Any Evidence Suggesting Incompetency During Trial?

The duties of the trial court do not end with any one informal inquiry into a defendant's competency. Rather, if evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the trial court *at any time before the sentence is announced*, the court on its own motion must suggest that the defendant may be incompetent and hold an informal inquiry. TEX. CODE CRIM. PROC. ANN. art. 46B.004(b), (c) & art. 46B.005(d) (Vernon 2006). Therefore, we must

determine whether the trial court abused its discretion in finding there was not "some evidence" throughout the remainder of the trial proceedings to suggest that Guerrero was incompetent to stand trial.

Guerrero argues on appeal that his defense was a "delusion . . . so strong and so complete that at many points during the proceedings the trial judge had ample evidence suggesting that [he] was incompetent." From the record it is evident that Guerrero's defense theory, or "delusion" as he characterizes it on appeal, was based on the premise that the State of Texas is a business corporation, and thus contract laws apply to all of its interactions with its citizens, including criminal prosecutions. For example, in addressing the pool of prospective jurors during voir dire, Guerrero explained his defense theory in the following manner:

> I've been indicted by the State of Texas . . . . This basically means that everyone in this room is against me, including myself, because we're all in the State of Texas . . . . You're probably wondering why I'm representing myself . . . . Basically, the other side would be paying for my defense. It would have been the State of Texas versus the State of Texas. Guess who wins that one? The State of Texas. All attorneys, including Judge Strauss, are employees and agents of the State . . . . Briefly, the State of Texas is a corporation and a business organization . . . . [T]he judge, prosecutor, and my standby counsel are all paid employees and therefore agents of the State . . . . It is because of this inescapable feeling of not getting a fair shake is the reason why I'm representing myself . . . . The State of Texas, through its agents, has served me . . . two true bills of indictments; account numbers, I repeat, account numbers just like a credit card account, 2006-CR-4524, 2006-CR-9269. I say account because I'm being held accountable for the charges on it . . . . The State of Texas is like a used car dealership. This courtroom is the showroom floor. The judge is the manager of the car lot, and he has to give the final okay on any deals that go on in here. The prosecutor is like a used car salesman. And my standby counsel is a mechanic who is paid by the dealership to tell me and you if the car is a lemon or not. The case or account number before you is the car that dealership wants to force me to pay for . . . .

In addition, Guerrero declined to enter a plea of "guilty" or "not guilty," instead stating, "we have not reached issue yet" on the charges; the court construed the plea as "not guilty." During his

opening statement, Guerrero compared the trial to a medieval jousting tournament, and informed the jury he would not dispute or argue with the State during trial because "that would give the Court jurisdiction or the right to settle the dispute." During the State's case-in-chief in both phases of trial, after the prosecutor had passed each witness, Guerrero would ask the witness whether he or she had a claim against him or knew anyone who had a claim against him; after receiving a negative answer, Guerrero would request that the court order his immediate release. In presenting his defense case, Guerrero attempted to call the prosecutors to the witness stand to ask them the same types of questions; after a hearing outside the jury's presence, the court sustained the State's objections and Guerrero rested his defense. During the charge conference, Guerrero requested a jury charge on the insanity defense, which was declined.[5] His closing argument referred to tracing the modern corporation back to Roman law, the Magna Carta of 1215, and the Uniform Commercial Code, among other topics. After the jury rendered its guilty verdict, Guerrero filed several post-verdict motions.[6]

Guerrero argues that all of these actions and statements constitute at least "some evidence" to suggest that he had no factual or rational understanding of the proceedings against him. The State responds that each of these instances was no more than Guerrero implementing his generally misguided, but consistent, defense strategy, and do not suggest mental incompetence to stand trial. We agree. While not based on correct principles of criminal law, Guerrero's contract-law-based

---

[5] The State objected that there was no evidence of insanity and that Guerrero had not given the required notice of his intent to raise an insanity defense. *See* TEX. CODE CRIM. PROC. ANN. art. 46C.051(b)(2) (Vernon 2006).

[6] Prior to the beginning of the punishment phase, Guerrero filed four *pro se* motions: (1) Post Conviction Motion for Discovery *Vinculum Juris Obligato in Usu* Compulsory Production for Full Disclosure as to Nature and Cause of Charges by Application for Subpoena *Duces Tecum*; (2) Injunction–Restraining Void Judgment; (3) Application for Post Conviction Writ of Habeas Corpus; and (4) Judgment *Non Obstante Verdicto*. The trial court denied the motions, noting that they were not appropriate because judgment had not yet been rendered.

defense showed a logical, not a confused, thought process which was applied consistently to every facet of the trial proceedings. The mere fact that it was an incorrect legal defense does not amount to "some evidence" that Guerrero lacked a rational or factual understanding of the proceedings. *See Godinez v. Moran*, 509 U.S. 389, 400 (1993) (defendant's "technical legal knowledge" is not relevant to assessment of his competence to represent himself) (citing *Faretta*, 422 U.S. at 836). Moreover, this type of legal theory based on a challenge to the State's authority over the defendant is not entirely uncommon. *See*, *e.g.*, *United States v. Greenstreet*, 912 F.Supp. 224, 228 (N.D. Tex. 1996) (defendant sued by United States for filing fraudulent UCC-1 financing statements against federal employees sought declaratory and injunctive relief that federal district court had no personal jurisdiction because he was of "Freeman Character" and therefore a sovereign entity); *Barcroft v. State*, 900 S.W.2d 370, 371 (Tex. App.—Texarkana 1995, no writ) (appeal from order dismissing suit against State seeking a declaratory judgment designating Barcroft a "Private State Citizen of Texas," prohibiting further treatment of him as a "corporation," and removing the "disabilities" placed on him by means of State contracts such as his birth certificate, driver's license application, and social security application and number); *Kimmell v. Burnet County Appraisal Dist.*, 835 S.W.2d 108, 109 (Tex App.—Austin 1992, writ dism'd w.o.j.) (defendant challenged court's jurisdiction over him and sought to remove tax collection case to "Common Law Court for Republic of Texas").

Finally, the mere fact that Guerrero requested a jury instruction on the insanity defense is not by itself sufficient to raise a question as to his competency to stand trial. *See McDaniel*, 98 S.W.3d at 711 (defendant's naked assertion that "I am incompetent" is not sufficient, without supporting evidence, to require an informal inquiry or formal hearing on competency). While Guerrero's approach to his defending himself based on contract law principles may have been unusual, misguided, and legally incorrect, it did not suggest that he lacked a rational understanding of the

proceedings. *See Baldwin v. State*, 227 S.W.3d 251, 255-56 (Tex. App.—San Antonio 2007, no pet.) (while some of defendant's testimony was non-responsive and damaging, other parts showed he not only understood the proceedings but hoped to use his testimony to obtain a lenient sentence). Guerrero's statements did not have the same confused, incoherent, bizarre quality that we have previously held suggestive of incompetence to stand trial. *Cf. Greene*, 225 S.W.3d at 329 (defendant's testimony was "of the most bizarre quality," demonstrating that "he had confused thoughts and was out of touch with reality"). Accordingly, we hold the trial court did not abuse its discretion during trial by failing to conduct an informal or formal inquiry into Guerrero's competence to stand trial. Guerrero's first two issues are overruled.

## DOUBLE JEOPARDY

Guerrero argues for the first time on appeal that the trial court violated his right to be free from double jeopardy when it punished him for possessing, possessing with intent to deliver, and manufacturing the same quantity of methamphetamine during the same transaction.[7] *See* U.S. CONST., amend. V; TEX. CONST., art. I § 14; *see also Stephens v. State*, 806 S.W.2d 812, 815 (Tex. Crim. App. 1990) (state and federal double jeopardy provisions are conceptually identical). Among other protections, the Double Jeopardy Clause protects against multiple punishments for the same offense. *Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *Lopez v. State*, 108 S.W.3d 293, 295-96 (Tex. Crim. App. 2003). In *Lopez*, the Court of Criminal Appeals held that the Double Jeopardy Clause prohibits separate punishments for distinct steps in a single drug transaction that flows from

---

[7] Under *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000), we may review a double jeopardy claim raised for the first time on appeal when the double jeopardy violation is clearly apparent on the face of the record and enforcing the usual rules of procedural default serves no legitimate state interest. Under the circumstances of this case, we find review of the issue is appropriate because the error is apparent from the face of the record and the trial court knew or should have known of the double jeopardy problem. *See Honeycutt v. State*, 82 S.W.3d 545, 547 (Tex. App.—San Antonio 2002, pet. ref'd).

one "original impulse." *Lopez,* 108 S.W.3d at 300-01 (holding that defendant charged with violation of section 481.112 of the Health & Safety Code cannot be punished more than once for manufacturing, possessing, and delivering the same single cache of drugs). In that case, Lopez was convicted of both delivery and possession with intent to deliver the same quantity of cocaine during a single transaction. *Id.* at 295. The Court of Criminal Appeals reasoned that because the single drug transaction arose from one original impulse, the two convictions were for the "same offense" under the *Blockburger* test,[8] and thus violated double jeopardy. *Id.* at 299-300; *cf. Webb v. State*,- - - S.W.3d- - -, No. 04-07-00220-CR, 2008 WL 2260702, at *2 (Tex. App.—San Antonio June 4, 2008, no pet.) (mem. op.) (distinguishing *Lopez*, and holding that separate punishments for manufacturing a single cache of drugs and possession of precursor materials did not violate double jeopardy because defendant had ability to manufacture additional quantities of the drug).

Here, Guerrero was convicted of simple possession, possession with intent to deliver, and manufacture of the same aggregate quantity of methamphetamine, all of which occurred on the same date; he received separate 45-year sentences on each of the three offenses, although the sentences are concurrent. In its brief, the State concedes that the conviction for the lesser-included possession offense must be vacated, but asserts that both the manufacturing and the possession with intent to deliver convictions should stand because "no double jeopardy issue is raised or exists" with respect to the manufacturing conviction.

First, we agree that the possession conviction must be vacated because it is a lesser-included offense of possession with intent to deliver. It is well settled that greater and lesser-included offenses are the same offense for purposes of double jeopardy. *See Parrish v. State*, 869 S.W.2d

---

[8] *Blockburger v. United States*, 284 U.S. 299, 303 (1932).

352, 354 (Tex. Crim. App. 1994). Further, it is similarly well settled that possession of a controlled substance is a lesser-included offense of possession with intent to deliver the same quantity of the controlled substance, and a defendant may not be convicted and punished for both offenses. *Berger v. State*, 104 S.W.3d 199, 205 (Tex. App.—Austin 2003, no pet.); *Price v. State*, 15 S.W.3d 577, 578 (Tex. App.—Waco 2000, pet. ref'd) (double jeopardy bars conviction for both possession and possession with intent to deliver a controlled substance absent evidence that different quantities are involved for each offense). Because Guerrero was convicted and punished for both simple possession and possession with intent to deliver the same aggregate quantity of methamphetamine, the conviction and sentence for the less serious offense of possession must be vacated. *Landers v. State*, 957 S.W.2d 558, 559 (Tex. Crim. App. 1997); *Berger*, 104 S.W.3d at 206 (stating that possession with intent to deliver is of a greater degree and punishment range than mere possession).

Secondly, as to whether Guerrero's convictions for manufacturing and possession with intent to deliver the same quantity of methamphetamine may both stand, we find *Lopez* to be controlling. In *Lopez*, the Court held that the Legislature did not intend that individual steps taken toward a single sale of a single quantity of a controlled substance constitute more than one violation of section 481.112(a). The Court noted that "there are at least five ways to commit an offense under Section 481.112: through knowing (1) manufacture; (2) an offer to sell; or (3) possession with intent to deliver; or through knowing delivery by (4) actual transfer; or (5) constructive transfer." *Lopez*, 108 S.W.3d at 297. The Court stated that all of these methods are merely "points along a continuum in the line of drug distribution," and that the defendant may only be prosecuted once for the same drug sale. *Id.* at 297-98. The State cannot obtain two convictions for the same sale of the same quantity of drugs because that violates double jeopardy. *Id.* at 300-01. Similarly, we conclude that Guerrero's manufacture of, and possession with intent to distribute, the same cache of

methamphetamine were the result of the same original impulse and may not be punished separately. *Id.* at 301.

When a defendant is convicted of two or more offenses that are the "same" under the double jeopardy analysis, we are required to retain the conviction for the "most serious offense," and to set aside any remaining convictions for the "same" offense. *Ex parte Cavazos,* 203 S.W.3d 333, 337 (Tex. Crim. App. 2006). The "most serious" offense is the offense for which the greatest sentence was assessed. *Id.* at 338. Here, however, the manufacturing and possession with intent to deliver offenses are both first degree felonies and exactly the same punishment of 45 years was assessed on each. Therefore, as the Court of Criminal Appeals did in *Lopez*, we will apply the method used prior to adoption of the most serious punishment test and uphold the conviction for the offense that was charged first in time, which in this case is possession with intent to deliver. *See Lopez v. State*, 80 S.W.3d 624, 629 (Tex. App.—Fort Worth 2002), *aff'd*, 108 S.W.3d 293 (Tex. Crim. App. 2003) (citing *Ex parte Drake*, 883 S.W.2d 213, 216 (Tex. Crim. App. 1994)). Accordingly, Guerrero's convictions for manufacturing and for the lesser-included possession offense are vacated. *Id.*; *Honeycutt v. State*, 82 S.W.3d 545, 549 (Tex. App.—San Antonio 2002, pet. ref'd) (lesser-included offense must be vacated when it creates a double jeopardy violation).

## CONCLUSION

Based on the foregoing reasons, we hold the trial court did not abuse its discretion in failing to conduct further informal or formal inquiries into Guerrero's competence to stand trial, and thus did not deprive Guerrero of due process. We further hold that Guerrero's convictions for simple possession, possession with intent to deliver and manufacturing of the same quantity of methamphetamine violates the Double Jeopardy Clause. Accordingly, we vacate Guerrero's convictions for simple possession and manufacturing, and affirm his conviction for possession with intent to deliver.

Phylis J. Speedlin, Justice

PUBLISH