**Opinion filed February 28, 2014**



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00061-CR

_____

## DAVID ERIC KINDER, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 90th District Court**

**Stephens County, Texas**

**Trial Court Cause No. F32989**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, David Eric Kinder, of the offense of manu-facturing a controlled substance, methamphetamine, of four grams or more but less than two hundred grams.   Upon Appellant's plea of true to the enhancement allegation, the jury assessed his punishment at confinement for fifty years and a $10,000 fine, and the trial court sentenced him accordingly.   In two issues,

Appellant challenges the sufficiency of the evidence and the trial court's denial of his motion for mistrial. We affirm.

*Background Facts*

Deputy Don R. Braly of the Stephens County Sheriff's Office received a tip from a citizen that a crime was being committed. Based on the tip, Deputy Braly went to Hubbard Creek Reservoir, where he found a pickup with a boat trailer in the parking lot near the boat ramp. Deputy Braly checked the license plate and found that the pickup was registered to Appellant. The boat trailer did not have a license plate. Deputy Braly moved his vehicle to a nearby park to watch the pickup. He eventually spotted two people in a small boat enter the area without any lights. The people loaded the boat onto the trailer, got in the pickup, and began to drive away. Deputy Braly and another deputy drove toward the boat ramp to conduct a traffic stop of the pickup.

Deputy Braly testified that he approached the pickup and activated his lights. Initially, the driver of the pickup did not stop. Instead, the driver continued out of the boat ramp area and turned right onto County Road 221. The driver then stopped the pickup. As Deputy Braly approached the pickup to contact the driver, he smelled a strong chemical odor that he did not associate with fishing or lake activities. Deputy Braly identified Appellant as the driver of the pickup and Jesse Dan Cates as the passenger. When Deputy Braly asked Appellant what they were doing out on the lake at night without any lights on the boat, Appellant claimed that they were "looking for lost goats." When asked about the items that were in the boat, Appellant explained that he had some junk in the boat, as well as some items that he and Cates had picked up along the shore. Deputy Braly noticed that a cooler in the boat had some frost around the bottom of it and that a gas can in the boat did not have a lid. He also noticed a wooden spoon in the boat that had some

2

sort of dried chemical on it. Deputy Braly saw what he believed was the gas can lid, and it was attached to clear plastic tubing, which was taped to a blue stick.

Deputy Braly contacted Game Warden Ed Russell, who arrived and ticketed Appellant for the offenses of operating a boat without proper lights and operating an unregistered motorboat. At that time, Officer Russell smelled a strong odor of ether, which he associated with "clandestine methamphetamine labs." He explained that, in his experience, "people throw things out of their vehicle that they don't want to get caught with," so he walked down County Road 221 toward the boat ramp. Officer Russell discovered some items in the grass near the roadway. He found a plastic Wal-Mart bag with a receipt attached to the bag, clear plastic tubing with black electrical tape on one end, and "a plastic bottle that was blackened somehow." The plastic bottle, which was identified as a Gatorade bottle, was located about seventy-five or eighty yards away from where Appellant stopped his pickup.

Officer Russell contacted George William Wade III, the chief deputy at that time, and secured the scene until Deputy Wade arrived. Deputy Wade conducted a field test of the substance inside the blackened bottle. Appellant and Cates were arrested, and the evidence was seized. Deputy Braly took several items to the Department of Public Safety laboratory for testing, including the wooden spoon and the blackened bottle. Laboratory tests confirmed that the bottle contained 150.99 grams of methamphetamine.

*Sufficiency of the Evidence*

On two grounds, Appellant challenges the sufficiency of the evidence to support his conviction for manufacturing methamphetamine. We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010,

3

pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). We defer to the jury's role as the sole judge of the witnesses' credibility and the weight their testimony is afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

Appellant's first complaint regarding the sufficiency of the evidence is confined to the issue of identity: he argues that the evidence was insufficient to support the jury's finding that he was the one who manufactured the methamphetamine that was found in the blackened plastic bottle. Appellant challenges the links connecting him to the blackened bottle that was found on the ground seventy-five to eighty yards away from where the traffic stop occurred. The State argues that it sufficiently connected Appellant to the methamphetamine due to the close proximity of the bottle, Appellant's possession of other contraband, and the strong odor of ammonia and ether coming from the boat.

A person who knowingly manufactures a controlled substance commits an offense. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2010). When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances that link the accused to the contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex.

4

Crim. App. 2006); *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). Courts have recognized a number of factors that may link an accused to contraband, including, among others, whether (1) the accused was present where the contraband was found; (2) the contraband was in plain view; (3) the accused was in close proximity to and could access the contraband; (4) the accused possessed other contraband; (5) the accused made incriminating statements, attempted to flee, or made furtive gestures; (6) there was an odor of drugs; (7) the accused had a right to possess the place where the contraband was found; (8) the contraband was in an enclosed place; (9) the amount of drugs was significant; (10) the accused possessed weapons or large amounts of cash; and (11) the conduct of the accused indicated consciousness of guilt. *See Evans*, 202 S.W.3d at 162 n.12. The number of factors present is not as important as the logical force or the degree to which the factors, alone or in combination, tend to link the accused to the contraband. *Isham v. State*, 258 S.W.3d 244, 249 (Tex. App.—Eastland 2008, pet. ref'd).

Appellant concedes that the wooden spoon found in his boat had a trace amount of methamphetamine on it. However, the spoon was not the only evidence that linked him to the blackened bottle. In addition to the wooden spoon, officers found several other items in Appellant's boat that were consistent with a mobile methamphetamine laboratory: a five-gallon gas can without its lid that was emitting a strong odor, an orange and white water cooler containing dry ice, two plastic Gatorade bottles, a can of sewer line cleaner, a can of starter fluid, and a blue stick with clear plastic tubing taped to it with black electrical tape. Deputy Braly found the lid to the gas can, which had clear plastic tubing attached to it. An orange cap was attached to the blue stick. Detective Wade testified that the orange cap looked like a cap from a plastic Gatorade bottle. The tubing was secured to the pole with black electrical tape.

5

Although Appellant claimed that he picked up the items from the shore, the evidence also supports a conclusion that the items were part of a "clandestine methamphetamine lab." To prove the offense of manufacture of a controlled substance, the State must link the defendant either to an interest in the place where the manufacturing was taking place or to the actual manufacturing. *Isham*, 258 S.W.3d at 248; *East v. State*, 722 S.W.2d 170, 172 (Tex. App.—Fort Worth 1986, pet. ref'd). This requirement is intended to protect an innocent bystander who inadvertently happens onto a methamphetamine lab. *Isham*, 258 S.W.3d at 248. Although mere presence at a drug laboratory is insufficient to support a conviction for manufacturing, it is a circumstance tending to prove guilt that, when combined with other facts, shows that the accused was a participant in the manufacturing. *Webb v. State*, 275 S.W.3d 22, 27 (Tex. App.—San Antonio 2008, no pet.).

When officers searched Appellant's pickup, they found a sack of fertilizer and a can of Prestone Starter Fluid. Testimony at trial showed that starter fluid is one of the main components when making methamphetamine because it contains ether and that fertilizer, lye or drain cleaner, and dry ice can be used to make anhydrous ammonia. Officers found a roll of black electrical tape that was similar to the tape securing the plastic tubing to the blue stick. Officers also found a roll of black electrical tape on Appellant's person when he was booked into jail. Receipts found in Appellant's pickup reflected the purchase of two rolls of electrical tape and dry ice at an Abilene Wal-Mart five days before the offense. Officers also found a receipt for a wooden spoon that was purchased on the date of the offense.

Additionally, there was evidence showing that Appellant had recently purchased an inordinate amount of cold medicine containing pseudoephedrine, which is an ingredient used to manufacture methamphetamine. The record shows that Appellant and his passenger, Cates, had purchased cold medicine from several

local pharmacies in the months before Appellant's arrest. Appellant purchased twenty-nine boxes of cold medicine from Wal-Mart pharmacies in November 2009 and seventeen boxes in December 2009. On December 26, 2009, Appellant purchased a box of cold medicine from the CVS in Breckenridge at 2:46 p.m., two boxes from the Wal-Mart in Graham an hour later, and another box at the Wal-Mart in Breckenridge at 5:22 p.m. That same day, Cates purchased two boxes of cold medicine from the Wal-Mart in Breckenridge at 5:06 p.m. and another box from the CVS in Breckenridge at 5:18 p.m. In January 2010, Appellant purchased two boxes at the Wal-Mart in Abilene, two boxes from the Wal-Mart in Mineral Wells, two boxes from the Wal-Mart in Breckenridge, two boxes at the Wal-Mart in Graham on two separate occasions, and two boxes at the Wal-Mart in Eastland.

In addition to the evidence showing that Appellant had the equipment and ingredients necessary to manufacture methamphetamine, officers linked the items that were found near the blackened Gatorade bottle to Appellant. The Wal-Mart bag that Officer Russell found was about forty or fifty yards from where the traffic stop of Appellant occurred, and it contained a box of ammunition. Attached to the bag was a receipt for that purchase. Officers obtained surveillance footage from the store matching the date and time reflected on the receipt. The footage showed that Appellant purchased the ammunition. About fifteen yards from the Wal-Mart bag, Officer Russell discovered plastic tubing with black electrical tape on one end. About fifteen yards further, Officer Russell discovered the blackened bottle. There was testimony at trial that the black electrical tape and the plastic tubing were similar to the tape and the tubing found on the boat and found in Appellant's pickup, and officers also found a roll of black electrical tape when Appellant was booked into jail.

The evidence was sufficient to establish that Appellant was not merely an innocent bystander who was stopped coincidentally near a bottle containing

7

methamphetamine. *See Isham*, 258 S.W.3d at 248. The fact that Appellant and his passenger had recently purchased the ingredients and possessed most of the equipment necessary for manufacturing methamphetamine is inconsistent with the notion that Appellant was merely in the wrong place at the wrong time. Appellant urges us to consider that the bottle was found in a public area and "75 to 80 yards away" from the location of the traffic stop. Despite the distance between Appellant and the bottle, we hold that, when the evidence linking Appellant to the bottle is viewed in the light most favorable to the verdict, a rational juror could have found beyond a reasonable doubt that Appellant manufactured the methamphetamine contained in the bottle.

In his second challenge to the sufficiency of the evidence, Appellant argues that there was no evidence that he manufactured more than four grams of methamphetamine. Appellant argues, "There was also a failure of proof in that there was no proof that the contents of the black plastic bottle were the same contents tested by the laboratory chemist." We note that Appellant did not challenge the admissibility of the test results at trial and said "[n]o objection" when it was offered into evidence. He contends that this is not a "mere chain of custody argument" and that the lack of proof that the substance tested was the substance found in the blackened bottle "created a fatal variance."

The State presented extensive testimony that established the chain of custody of the substance found in the Gatorade bottle. Appellant does not explain why he believes there was no proof that the chemicals tested were those found in the blackened Gatorade bottle. Appellant apparently refers to the testimony of Herman Carrell, the forensic scientist, who agreed on cross-examination that he could not tie what he tested "to a specific piece of evidence submitted" through his own personal knowledge because he was not the evidence technician who received the evidence. When asked if, "for all you know[,] [the substance tested] could

8

have come from, say, a bottle of -- an empty coke bottle that was filled with liquid on the side of the road," Carrell explained that he can only rely on the information written "on the submission form that came from the officer at the date and time that it was received into the laboratory."

As stated above, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Isassi*, 330 S.W.3d at 638. As a condition precedent to admissibility, there must be "evidence sufficient to support a finding that the matter in question is what its proponent claims" it to be. TEX. R. EVID. 901(a). Testimony that establishes "the beginning and the end of the chain of custody, particularly when the chain ends at a laboratory," sufficiently authenticates the item for purposes of admissibility. *Martinez v. State*, 186 S.W.3d 59, 62 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). A trial court does not abuse its discretion in admitting evidence when it "reasonably believes that a reasonable juror could find that the evidence has been authenticated or identified." *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007). Unless someone alleges tampering or fraud, the gaps in the chain of custody affect the weight to be given the evidence. *Id.* at 503–04.

Officer Russell walked down County Road 221 toward the boat ramp, and when he found the blackened Gatorade bottle and other items, he contacted Deputy Wade and secured the scene. Deputy Wade testified that he seized the blackened Gatorade bottle, and he identified the bottle from a picture at trial. Deputy Wade conducted a field test of the substance inside the blackened bottle. Deputy Wade testified that, after securing the seized evidence, he transported it to the Stephens County Sheriff's Office, where he and Deputy Braly placed it into the evidence vault.

Deputy Braly later removed the exhibits, completed a laboratory submission form, and took the items to the DPS laboratory for testing. The form reflected four itemized exhibits: (1) the wooden spoon, (2) the gas can, (3) the orange and white water cooler, and (4) a "[c]ontainer with liquid and substance" that was found "[o]n the ground off of CR 221." Because he did not submit the gas can for analysis, Deputy Braly drew a line through that item. Detective Braly told the jury that the laboratory technician took the substance out of the water cooler and placed it into a plastic bag.

Carrell testified that the laboratory technician assigns a unique number when the evidence is received. In this case, the evidence was marked with the number L4A-68702. Carrell testified that, before he tested the evidence, he conducted an inventory of the exhibits and compared it to the items listed on the submission form "to make sure that what's listed on the submission form is actually what [he has] to analyze." Carrell testified that he labeled the three items he tested as 1A, 1B, and 1C. Exhibit 1C corresponded to the last item listed on the submission form. When Carrell tested the substance contained in Exhibit 1C, it was in a laboratory bottle that was marked as "Ex. 1C" and identified as L4A-68702. He told the jury that Exhibit 1C contained 150.99 grams of methamphetamine.

Although Carrell could not say, based on his own personal knowledge, that the substance contained in the laboratory bottle was the same substance that had been contained in the blackened Gatorade bottle, he testified that it was consistent for the lab tech to put certain types of substances into laboratory containers instead of the container in which it arrived. Carrell explained that, when "certain items are brought to [the lab] and they are not safe or they are not properly put into containers that would keep [accidents from] happening, they will put them in laboratory containers at that time." Carrell explained that "[t]here are corrosive

substances in the use of manufacturing methamphetamine" and that the laboratory's "Nalgene bottles will hold solvents, acid-based, without degrading."

Any problems with respect to gaps in the chain of custody go to the weight to be given the evidence, and we do not invade the province of the jury. *See Martinez*, 186 S.W.3d at 62. Viewing all of the evidence in the light most favorable to the verdict and properly deferring to the jury, we hold that a rational jury could have found that the substance tested by Carrell was the substance that was found in the blackened Gatorade bottle. Therefore, we conclude that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Appellant's second issue is overruled.

*Denial of Motion for Mistrial*

Appellant contends in his first issue that the trial court erred when it denied his motion for mistrial because the prosecutor improperly commented on his failure to testify. We review the trial court's denial of a motion for mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). A comment on a defendant's failure to testify offends both the United States and Texas Constitutions and violates Texas statutory law. U.S. CONST. amend. V; TEX. CONST. art. I, § 10; TEX. CODE CRIM. PROC. ANN. art. 38.08 (West 2005). We consider the prosecutor's language from the jury's standpoint, and it must be clear that the comment was a reference to the defendant's failure to testify. *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001). We must consider the context in which the comment was made and determine "whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Cruz v. State*, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007) (quoting *Bustamante*, 48 S.W.3d at 765).

11

Specifically, Appellant complains of the following statement made during closing arguments:

> So when Deputy Braly goes up and he asks Mr. Kinder "what were you doing on the lake" Mr. Kinder says "looking for lost goats." Deputy Braly had already smelled the strong chemical smell that's not associated with fishing, anything on the lake, an outboard motor, so he says, "What's that stuff in your boat?" And what did Mr. Kinder say to Deputy Braly at that time? "Some junk. Some junk that we found on the shoreline." Does that make sense to you?

> You know, you look at the orange cooler and, if you found it on the shoreline, do you think the person who may have found it on the shoreline, if that's what happened, didn't open it? It had something in it. It was heavy. So you got to know that anybody who would have found it on the shoreline would have opened it, and when they opened it they would have had that chemical smell. So why wouldn't you tell the deputy let me show you what we found. We found an orange and white cooler and it was frosted up the side. And, man, when we opened it, it had dry ice in it. Why would anybody have dry ice in February? What do we do with it? Oh, man, it stunk horrible. Oh, Deputy, we also found this red gas can and it didn't have a stop on it and there's something in it. And we smelled of it. Oh, strong chemical smell. And, Deputy, you're not going to believe this blue pole that we found. Man, it's crazy. It's special. I wonder what somebody was doing with that. Don't you know that somebody who had not been manufacturing methamphetamine may have said something like that?

Appellant objected to the statement as a "reference to defendant's failure to testify," and the trial court sustained the objection, instructed the jury to disregard, but denied the motion for mistrial. The State argues that the jury would not have understood the prosecutor's statement to be a reference to Appellant's failure to testify. Appellant contends that the prosecutor's argument was an "improper reference to [Appellant's] invocation of his fifth-amendment privilege" because "[o]nly appellant could deny that the items were not used to manufacture methamphetamine."

12

We conclude that the prosecutor's statement was not a comment on Appellant's failure to testify at trial. When we view it in context, the complained-of statement does not relate to Appellant's failure to testify but, rather, relates to the plausibility of Appellant's pre-arrest explanation for the mobile methamphetamine lab found in his boat. *See Keith v. State*, 384 S.W.3d 452, 462 (Tex. App.—Eastland 2012, pet. ref'd) ("[T]he complained-of statement by the prosecutor relates to appellant's concealment efforts prior to being arrested, rather than his failure to testify."). As such, the prosecutor's argument was not an impermissible comment on Appellant's failure to testify.

To the extent that Appellant's argument can be construed as a complaint about post-*Miranda*[1] silence, we again disagree because Appellant had not invoked the privilege and had not been placed under arrest. *See Salinas v. State*, 369 S.W.3d 176, 179 (Tex. Crim. App. 2012) ("We hold that pre-arrest, pre-*Miranda* silence is not protected by the Fifth Amendment . . . and that prosecutors may comment on such silence regardless of whether a defendant testifies."). Moreover, the State did not refer to Appellant's silence but, rather, argued that the explanation Appellant gave was inconsistent with innocent conduct.

The trial court did not abuse its discretion when it denied Appellant's motion for mistrial. Appellant's first issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.


February 28, 2014                                                    JOHN M. BAILEY

Do not publish. *See* TEX. R. APP. P. 47.2(b).          JUSTICE

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

---

[1]*Miranda v. Arizona*, 384 U.S. 436 (1966).