

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-11-00227-CR

BOBBY GLENN CANIDA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 6th District Court
Lamar County, Texas
Trial Court No. 24466

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Moseley

OPINION

Bobby Glenn Canida appealed his conviction by a jury of the manufacture of methamphetamine in an amount of more than one gram but less than four grams.[1] On November 27, 2012, this Court (1) concluded that the evidence was legally insufficient to demonstrate that Canida manufactured more than one gram of methamphetamine, (2) reversed the trial court's judgment, and (3) rendered a judgment of acquittal. *Canida v. State*, 387 S.W.3d 668 (Tex. App.—Texarkana 2012), *rev'd*, 434 S.W.3d 163 (Tex. Crim. App. 2014).

The State filed a petition for discretionary review with the Texas Court of Criminal Appeals to determine whether this Court should have reformed the judgment to reflect conviction of a lesser-included offense rather than rendering a verdict of acquittal. *Canida*, 434 S.W.3d at 163, 165 (discussing *Bowen v. State*, 374 S.W.3d 427 (Tex. Crim. App. 2012)). The Texas Court of Criminal Appeals granted the State's petition, reversed our opinion, and remanded the case for reconsideration in light of its decision in *Thornton v. State*, which was decided after we issued our opinion in this case. *Id*. *Thornton* held that

> after a court of appeals has found the evidence insufficient to support an appellant's conviction for a greater-inclusive offense, in deciding whether to reform the judgment to reflect a conviction for a lesser-included offense, that court must answer two questions: 1) in the course of convicting the appellant of the greater offense, must the jury have necessarily found every element necessary to convict the appellant for the lesser-included offense; and 2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense at trial, is there sufficient evidence to support a conviction for that offense? If the answer to either of these questions is no, the court of appeals is not authorized to reform the judgment. But if the answers to both are yes, the court is authorized—indeed required—to avoid the "unjust" result of an

---

[1]Canida was sentenced to eighty years' imprisonment after he entered pleas of true to the State's enhancement paragraph.

> outright acquittal by reforming the judgment to reflect a conviction for the lesser-included offense.

*Thornton v. State*, 425 S.W.3d 289, 299–300 (Tex. Crim. App. 2014) (citation omitted).

In light of *Thornton* and its clarification of *Bowen*, we (1) modify the trial court's judgment to reflect a conviction for manufacture of a controlled substance in an amount less than one gram and (2) remand the case for trial on punishment. *See Canida*, 434 S.W.3d at 165.

Here, the jury found Canida guilty of manufacturing methamphetamine in an amount of more than one gram but less than four grams. By its finding, the jury necessarily found all of the elements of the lesser-included offense of manufacture in an amount less than one gram. Thus, the first prong of the *Thornton* analysis is met.

Next, we conduct an evidentiary sufficiency analysis as though Canida had been convicted of manufacture of less than one gram of methamphetamine to determine if there is legally sufficient evidence to support a conviction for that offense. *Thornton*, 425 S.W.3d at 300.

> The relevant question "is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Under our case law, "[v]iewing the evidence 'in the light most favorable to the verdict' . . . means that the reviewing court is required to defer to the jury's credibility and weight determinations[.]" We should take care, in other words, not to act as a "thirteenth juror" . . . .

*Id.* at 303 (citations omitted) (footnotes omitted).

In early 2011, Canida's name "popped up" in the database of pseudoephedrine purchases made at pharmacies within Lamar County. Based on an investigation, narcotics investigator Anson Amis obtained a search warrant for Canida's residence, which consisted of Canida's

3

camper and shed located on Canida's mother's property. During the execution of the search warrant, Canida, Jimmy Jackson, Yvonne,[2] Tiffany Anderson, and Chad Sartor were present. Those names were also included on the pharmacy logs that Amis had been investigating.

Amis testified that he found the following items during the search of what he believed was a methamphetamine laboratory: two boxes of pseudoephedrine medicine totaling thirty tablets, rubbing alcohol, lithium batteries, Epsom salt, an unopened hot and cold pack, unused coffee filters, used coffee filters containing "a white, powder substance," digital scales, syringes containing a clear liquid substance,[3] plastic tubing, a large Ziploc bag containing "a bunch of smaller Ziploc bags," a police scanner, and a Gatorade bottle and glass jar (both of which could be used to make methamphetamine using the "Nazi–Birch" shake and the bake method). Amis also located a barrel that contained the burned remnants of hot and cold packs containing ammonium nitrate, containers of lighter fluid, batteries that had been cut and taken apart to extract lithium, the packaging from pseudoephedrine medicine tablets, and foil. According to an inventory sheet introduced into evidence, plastic tubing was found inside Canida's pocket. Amis testified that each of the above items could be used in the manufacture, use, or sale of methamphetamine.

Because the analysis we apply on remand is based on the lesser-included offense of manufacture of methamphetamine in an amount less than one gram, and not on the lesser-included offense of attempt to manufacture more than one but less than four grams as suggested

---

[2]Yvonne's last name was not in the record received by this Court.

[3]The liquid in the syringes was not tested for methamphetamine.

4

by the State, it becomes critical to recognize that Amis also recovered a lime-salt container with a crystal residue that tested positive for an unknown quantity of methamphetamine.

Canida was arrested and interviewed. Canida admitted to using syringes to inject himself with methamphetamine, and needle marks were found on his person. Canida's initial interview was played for the jury. During a second interview, he admitted that he had recently made methamphetamine using the Nazi-Birch method in a Gatorade bottle with pseudoephedrine purchased by Trasa Whitley, Cheryl Hixson, Shad Sawyer, and Jeff Lawson—all additional names that were flagged by Amis during his review of pharmacy purchase records.[4]

Officer Tommy Moore testified that the Nazi-Birch method could produce methamphetamine in "30 to 45 minutes." He explained that key ingredients, such as pseudoephedrine, alcohol, lye (or another petroleum solvent such as camp fuel), are first shaken in a bottle.[5] Next, lithium is added to start the chemical reaction, and the cooker then "[d]rain[s] off the pressure" as the ingredients continue to react. Once the reaction is completed, a "pure liquid substance, which is going to be liquid methamphetamine" is produced, and tubing is used to separate gases from the liquid. Moore testified that once a white substance is produced in the bottle, it is strained through a coffee filter and allowed to dry to create the final product. Based on his experience, Moore testified, "[I]t's obvious to me that the defendant is producing and manufacturing methamphetamine."

---

[4]Canida's mother, Ruby Louise Taylor, testified that Canida was previously incarcerated for the manufacture of methamphetamine.

[5]During cross-examination, Amis admitted that some of the ingredients necessary to make methamphetamine, such as lye, sulfuric acid, and muriatic acid, were not found during the search.

A person commits an offense if he knowingly manufactures methamphetamine. TEX. HEALTH & SAFETY CODE ANN. § 481.112(a) (West 2010).[6] Canida admitted that he had asked others to bring him pseudoephedrine to make methamphetamine. Canida was meeting with four people who had been flagged in the pharmacy logs Amis was investigating when officers executed the search warrant and found thirty pseudoephedrine tablets in two unopened boxes. During his interviews, Canida admitted that he had recently manufactured methamphetamine. Used hot and cold packs, stripped batteries in the burn pile, discovery of items consistent with the operation of a methamphetamine laboratory, coffee filters containing a white, powdery substance often used to separate the final product, and a lime-salt container containing the final product of methamphetamine in an unknown quantity constituted evidence of recent manufacture. Additionally, Canida was found with plastic tubing in his pocket at the time of his arrest. Viewing this evidence in the light most favorable to the verdict, we conclude—as we had previously—that the evidence is legally sufficient to prove that Canida manufactured methamphetamine in an amount less than one gram. *See Canida*, 387 S.W.3d at 672; *see also Thornton*, 425 S.W.3d at 303. Thus, *Thornton*'s second prong has been met.

In accordance with the direction provided by *Thornton*, which included clarification of the Texas Court of Criminal Appeals' decision in *Bowen*, we reverse the trial court's judgment and remand this case to the trial court to (1) modify the judgment to reflect a conviction for

---

[6]"To obtain a conviction for the manufacture of a controlled substance, the State must link the defendant either to an interest in the place where the manufacturing was taking place or to the actual act of manufacturing." *Webb v. State*, 275 S.W.3d 22, 27 (Tex. App.—San Antonio 2008, no pet.). "Manufacturing can be established through circumstantial evidence." *Id.* "A link to manufacturing exists when there is 'evidence of possession of a drug lab on one's premises combined with evidence that the lab has been used on the premises to manufacture the drug alleged, and in circumstances where the presence of the lab . . . is shown to have been known to the defendant.'" *Id.* (quoting *East v. State*, 722 S.W.2d 170, 171–72 (Tex. App.—Fort Worth 1986, pet. ref'd)).

manufacture of methamphetamine in an amount less than one gram and (2) to conduct a new punishment hearing. *See Thornton*, 425 S.W.3d at 307; *Bowen v. State*, 374 S.W.3d 427, 432 (Tex. Crim. App. 2012).


Bailey C. Moseley
Justice

Date Submitted:     September 4, 2014
Date Decided:       September 26, 2014

Publish

7