CAUSE # CR14-049    Court of Appeal #
04-14-00887-CR

● ORIGINAL    **555-16**

THE State of Texas          THE Supreme Court
of
VS
Austin Texas 28701
Ricky Allen Wentzel Calbat    201 West 14th Street
Room 106

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAY 17 2016

Abel Acosta, Clerk

Cover Sheet
&
Attorney at Law
Info

● I. Hand Written Pro Se Petition For
A Review pursuant to Rules of Appelate
Procedure.

II Findings of Petition

FILED IN
COURT OF CRIMINAL APPEALS

MAY 20 2016

Abel Acosta, Clerk

III Grounds For Relief

V Relief Sought
IV Statement of Pro Se Statement
III Unsworn Declartion

● Attorney For Ricky Calbat
M. Patrick Maguire, P.C.
945 Barnett St. Kerrville Tx 28028
PH # (830) 895-2590  FAX (830) 895-2594  mpmlaw@kte.com

The State of Texas

Vs.

Ricky Allen Wentzel Calbat

In The Suprem Court of

Austin, TX 28201

## Pro Se Petition
### For Review under Appliant Laws

### I

I Ricky Calbat, Due swear that all information that is said on this said petition is True & Correct to the best of my knowledge and understanding

### II
### Findings

a. d Ricky Calbat have resceveal a denial / or a statement of affirmation of Judgement on the 4TH Court of Appeals in San Antonio TX.

b. To me Ricky Calbat's best knowledge find the ruling a bit prejidence due to inseffeciant exediance in the case.

c. The only evedince in this said case# 04-14-00887-CR that can be used

against me, was never proven without a reasonable doubt said in Trial by the arresting officer and the Lab Technician That there was NO pseudoephedrine substance found at the sceen or turned into the Lab for testing. It is stated on my transcripts that they couldn't produce the substance with out a reasonable dubt.

D. Facts in this case have been changed through this entire case then when Ricky Calbot showed up to Day one in Trial the Indetment was changed because they couldn't produce more than 400 grams of Meth so I was the Sentenced to 20 years, which is the max. penalty for this said charge.

E. This is Ricky Calbot's first felony Conviction in the State of Texas, and I feels he was sentenced to a very steep Sentence.

## III

## Grounds for Relief

This case has been changed and reduce

The State of Texas
vs
Ricky Allen Wentzel Calbat

The Supreme Court of
Austin Tx. 78701

My the State of Texas to convict Ricky Calbat any way they could with false testamony by my own family and by a material wittness that has a very bad criminal history of this same offense. She is also had a grudge agenst my family for unrelated offenses.

## Relief Sought from original Sentence

I Ricky Calbat hope and pray with all of my life that I can at least have a chance to be a member of the society again. I do admit I have a drug problem, and am willing to do what ever the state can provide me. also pray that you can find in your heart that you can reduce my sentence to something more managable

Continuance •••

The State of Texas

The Supreme Court
IN
Austin TX 78701

VS

Richy Allen Wentzel Colbat
.... Continuance

Statement of Pro Se

Wherefor Premises Considered, I the Suprm Court, in Austin TX, find this said Petition in right mind and under Texas procedure of a Pro Se Petition for a Review Under Appeleant Procedures. Also finds that I the evidence in said Cause # CR14-049 of Appeal RE: No. 04-14-00887-CR is insuffent and filed incorrectly to Sinture a 1st time felon to 20 years to TDCJ, and proess the Supreme Court in Austin TX finds it in there Hearts of Minds to grant me an appeal in the Supreme Court.

The State of Texas

The Supreme Court
Of
Austin Tx, 78701

VS

Ricky Allen Montre Calbat

Unsworn Declaration

I, Ricky Calbat, Presently Incarcerated at the Dominguez Unit In San Antonio tx, Bexar County. Declare under the Penalty of Perjury That the foregoing is Irue and Correct.

Executed on This ___9Th___ day of MAY ___ 2016___

Signiture X _____

TDCJ # 01969913
SS# 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
DoB 10-17-81



# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00887-CR

Ricky Allenwentzel **CALBAT**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 198th Judicial District Court, Bandera County, Texas
Trial Court No. CR14-049
Honorable M. Rex Emerson, Judge Presiding

Opinion by:    Jason Pulliam, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
    Rebeca C. Martinez, Justice
    Jason Pulliam, Justice

Delivered and Filed:  April 27, 2016

AFFIRMED

A jury found Ricky Calbat guilty of the offense of possession of a chemical precursor, pseudoephedrine, with intent to manufacture a controlled substance, methamphetamine. The trial court assessed punishment at twenty years' imprisonment. On appeal, Calbat contends the evidence is insufficient to support his conviction. The judgment of the trial court is affirmed.

## Background

On December 3, 2014, Sergeant Gerald Johnson, Jr. of the Bandera County Sheriff's Department received information regarding a possible clandestine methamphetamine laboratory

located at Calbat's residence. Sgt. Johnson also determined two people believed to be residing at the same address had active outstanding arrest warrants. Sgt. Johnson and two other deputies visited the address to conduct a warrant check and investigate. A man later identified as Jackson Mann was walking away from the residence when the deputies arrived. Corporal Robert Vela intercepted Mann and spoke with him. Deputy Ferniz approached the front door of the trailer house located at the address, where he spoke with Calbat, Rachel Calbat, and another woman, who were standing on the front port. When Sgt. Johnson walked past the front porch, he smelled a very strong and distinct odor he associated with the manufacture of methamphetamine. Sgt. Johnson saw a lightbulb that appeared to have been converted into a methamphetamine pipe lying on top of a trash bag located on the front porch near the door. Calbat told the deputies the pipe belonged to Mann. Sgt. Johnson then requested consent to search the residence, but was denied.

Sgt. Johnson obtained a search warrant while the other deputies secured the scene. Sgt. Johnson testified the search of the residence resulted in the seizure of material and objects commonly used to manufacture methamphetamine, including: empty boxes and blister packs for the over-the-counter medication Sudafed that contains pseudoephedrine; sodium hydroxide, or lye, drain cleaner; acid; hydrogen peroxide; engine starter fluid; batteries; plastic tubing; a coffee grinder; and broken glass pipes. Deputies also collected several items suspected to contain methamphetamine or methamphetamine residue.

The indictment against Calbat alleged he "with intent to unlawfully manufacture a controlled substance, namely methamphetamine, possess[ed] precursors, to-wit: pseudoephedrine, sodium hydroxide, hydrochloric acid, salt and plastic tubing." During the charge conference at trial, Calbat pointed out the indictment and proposed jury charge listed items that were not considered chemical precursors under the Health and Safety Code. By agreement the parties amended the jury charge to allege only possession of the chemical precursor pseudoephedrine with

the intent to manufacture methamphetamine. Calbat then moved for a directed verdict, arguing the State presented no evidence Calbat possessed pseudoephedrine. The trial court denied Calbat's motion, and the jury ultimately found Calbat guilty. The trial court assessed punishment at twenty years' imprisonment.

Calbat subsequently perfected this appeal.

## ANALYSIS

In his sole issue on appeal, Calbat contends the evidence is legally insufficient to support his conviction because the State failed to present evidence sufficient to prove he possessed pseudoephedrine as required by section 481.124 of the Health and Safety Code.

### Standard of Review and Applicable Law

When examining the sufficiency of the evidence, an appellate court considers all the evidence in the light most favorable to the conviction to determine whether, based on the evidence and reasonable inferences therefrom, a rational trier of fact could have found each element of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012).

As the factfinder, the jury is the exclusive judge of witness credibility and the weight of the evidence. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015). The jury is permitted to draw any reasonable inferences from the evidence so long as the inference is supported by the record. *Id.* Further, the reconciliation of conflicts in the evidence is within the factfinder's exclusive province. *Wyatt v. State*, 23 S.W.3d 18, 30 (Tex. Crim. App. 2000). If a record supports conflicting inferences, the appellate court presumes the factfinder resolved the conflicts in favor of the prevailing party and therefore defers to that determination. *Jackson*, 443 U.S. at 319; *Hooper v. State*, 214 S.W.3d 9, 12 (Tex. Crim. App. 2007). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a

- 3 -

conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see also Canida v. State*, 446 S.W.3d 601, 605 (Tex. App.—Texarkana 2014, no pet.).

A person commits the offense of possession of a chemical precursor with intent to manufacture a controlled substance if, with intent to unlawfully manufacture a controlled substance, the person possesses or transports an immediate precursor, a chemical precursor, or an additional chemical substance named as a precursor by the director of the Texas Department of Public Safety under Texas Health and Safety Code Section 481.077(b)(1). TEX. HEALTH & SAFETY CODE ANN. § 481.124(a)(2)(3) (West Supp. 2015). The Texas Controlled Substances Act ("TCSA") defines pseudoephedrine as a "chemical precursor." *Id.* § 481.002(51)(O) (West Supp. 2015). In Texas, possession may be proved by showing a defendant had actual care, custody, control, or management of an item. *See* TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2015); TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West Supp. 2015). According to the TCSA:

> "Manufacture" means the production, preparation, propagation, compounding, conversion, or processing of a controlled substance other than marihuana, directly or indirectly by extraction from substances of natural origin, independently by means of chemical synthesis, or by a combination of extraction and chemical synthesis, and includes the packaging or repackaging of the substance or labeling or relabeling of its container."

TEX. HEALTH & SAFETY CODE ANN. § 481.002(25) (West Supp. 2015). Additionally, the TCSA identifies methamphetamine as a controlled substance. *Id.* § 481.102(6) (West 2010).

### Application

The evidence presented at trial consisted of testimony from Sgt. Johnson, Corporal Vela, controlled substance analyst Jose Martinez from the Texas Department of Public Safety ("DPS"), and Tessa Stanley, one of the six people arrested the day the search warrant was executed. Calbat

and Mrs. Calbat testified in Calbat's defense, and the State presented additional rebuttal testimony from Travis Morgan and Jessie Calbat, Calbat's brother.

Stanley testified she heard Calbat and Mann discussing a plan to make money by manufacturing and selling methamphetamine. Calbat agreed to use his trailer to "cook" the methamphetamine so he could receive a larger cut of the profits. Stanley testified she drove Mann and another woman to several stores in San Antonio, where the couple purchased the ingredients and materials to manufacture methamphetamine using Calbat's and Mann's combined funds. On cross-examination, Stanley admitted some of the ingredients or materials were purchased with her credit card. Stanley additionally testified Calbat and Mann thoroughly discussed the manufacturing process and carried the purchased materials and ingredients into Calbat's trailer after the shopping trip.

Stanley testified the manufacturing process did not go as planned and one of the trailer's occupants was becoming physically ill. Stanley took her friend Kolbee Trammel to Calbat's trailer to help figure out what had gone wrong. According to Stanley, Trammel told Calbat that incorrect or difficult to use ingredients had been purchased and other ingredients were not being handled properly. Stanley testified the ingredients and materials for manufacturing methamphetamine were not gathered in a central location, but were located throughout the trailer when she and Trammel arrived. Stanley also testified the smell in the trailer was horrible and smelled of "rotten Easter eggs that just keep cooking." Stanley further testified she saw a bottle hand-labeled hydrochloric acid, in addition to Sudafed tablets and boxes "everywhere." Stanley stated she witnessed Calbat handling the Sudafed boxes, blister packs, and tablets. Stanley also testified she watched several different people using a coffee grinder to grind up the Sudafed tablets to be used in the methamphetamine manufacturing process.

Sgt. Johnson testified the seized items, including the materials, ingredients, and suspected methamphetamine residue, were found in various places throughout the trailer. During Sgt. Johnson's testimony, the State played for the jury an instructional video of methamphetamine production, and Sgt. Johnson explained how each of the seized items could have been used in the methamphetamine manufacturing process as shown in the video. Sgt. Johnson also explained how the pseudoephedrine tablets would have been ground up using a coffee grinder and consumed during the manufacturing process.

Martinez, the DPS controlled substance analyst, testified the Bandera County Sheriff's Department sent six samples to the DPS lab for "controlled substance" analysis. According to Martinez, of the six samples, two could not be analyzed, two contained no controlled substances, and two tested positive for methamphetamine. The samples that tested positive for methamphetamine were both liquid and crystal form.

Calbat took the stand in his defense, testifying he and his wife had been living in the trailer for only three days. According to Calbat, the items described by Sgt. Johnson were not his and items shown in the State's exhibits had been left in the trailer by its previous tenants. Calbat testified he was not manufacturing methamphetamine in the trailer, and also testified any strong odor in the trailer was from his cooking a roast. Calbat insisted he did not know the seized items depicted in the State's exhibits were present in the trailer.

Rachel Calbat, Calbat's wife, also testified the couple had been living in the trailer for only three days. Additionally, Rachel insisted there were no strong odors, testifying the only smell in the trailer was from a roast Calbat was cooking.

In response, the State presented testimony from Calbat's landlord, Travis Morgan. Morgan testified Calbat's parents rented the property for Calbat in July 2013 and Calbat moved in within

a few weeks. Calbat's brother Jessie also testified Calbat had been living at the property for approximately six months at the time of the offense.

In this case, the jury charge tracked the Health and Safety code definition of possession. Given the charge, the jury was authorized to find Calbat possessed pseudoephedrine if it found he exercised care, custody, control, or management over pseudoephedrine. Stanley testified she witnessed others purchase and deliver Sudafed tablets containing pseudoephedrine to Calbat for the purpose of manufacturing methamphetamine. Stanley's additional testimony that she witnessed Calbat with the Sudafed boxes, coupled with Sgt. Johnson's testimony that the empty boxes and blister packs were found in Calbat's residence supports a reasonable juror's belief beyond a reasonable doubt Calbat possessed pseudoephedrine. The jury was within its rights as the factfinder to resolve any conflict between Stanley's and Calbat's testimonies regarding the existence and possession of pseudoephedrine in Stanley's favor. *See Jackson*, 443 U.S. at 319; *Wyatt*, 23 S.W.3d at 30.

Further, Stanley, Corporal Vela, and Sgt. Johnson testified regarding the odor in and around Calbat's trailer. According to Corporal Vela and Sgt. Johnson, the odor was strong and distinct and one they closely associated with methamphetamine manufacturing. Additionally, Sgt. Johnson explained how many of the seized items displayed evidence of having been used during the methamphetamine manufacturing process. This testimony, coupled with the existence of methamphetamine in liquid and crystal forms, constituted evidence of recent methamphetamine manufacture.

When the evidence is viewed in the light most favorable to the verdict, a rational factfinder could have found Calbat possessed pseudoephedrine. A rational jury could also have determined Calbat possessed the pseudoephedrine with the intent to manufacture methamphetamine. Consequently, the court concludes the evidence in this case is sufficient to sustain the jury's finding

that Calbat committed the offense of possession of a chemical precursor with the intent to manufacture a controlled substance.

Calbat's sole issue on appeal is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.

Jason Pulliam, Justice

DO NOT PUBLISH

Ricky Cabot #01969913
Dominguez Unit
6535 Cagnon RD
San Antonio Tx 78252

* LEGAL *

Presiding Judge
Supreme Court Bldg.
SHARON KELLER
201 West 14Th St.
Room 106 Austin Tx. 78701

78701-181508

SAN ANTONIO TX 780
RIO GRANDE DISTRICT
10 MAY 2016 PM 1 L
N SUPREME COUR

MAY 16 2016

CAPITAL
STATION

U S POSTAGE